UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LEMARIO QUINNTEL JOHNSON,    )
                             )
            Movant,          )
                             )
    v.                       )          Case No. 4:19 CV 2756 CDP
                             )
UNITED STATES OF AMERICA,    )
                             )
            Respondent.      )

## MEMORANDUM & ORDER

This matter is before the Court on movant Lemario Quinntel Johnson's

motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, along

with numerous other motions he has filed.  In 2018, Johnson pleaded guilty to

being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and was

sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1).  Case No.

4:17CR146 CDP (Crim.).  On October 22, 2018, I sentenced Johnson to 120

months in prison, the sentence jointly recommended by the parties, to be followed

by three years of supervised release.  (Crim. ECF 76.)  Johnson now claims that he

received ineffective assistance of counsel and that his conviction should be vacated

in light of recent Supreme Court precedent.  For the reasons stated below, I will

deny his motion to vacate and all other motions.

## Background

In December 2015, Johnson approached a parked car, pointed a gun at its driver and passenger, and told them that he would end their lives.  After Johnson rode off, the driver called the Ferguson Police Department while following Johnson to a Circle K in Ferguson, Missouri.  Officers arrested him there and discovered a fully loaded semiautomatic pistol on his right hip.

Johnson later pleaded guilty to a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  In his guilty plea agreement, Johnson acknowledged that the United States could prove all of the relevant facts of the crime, including that he had been convicted of a crime punishable by imprisonment for a term exceeding one year.  At the conclusion of the hearing, I found that Johnson understood his rights, and "the plea . . . is being entered voluntarily and it has a factual basis that contains all of the elements of the crime." (Crim. ECF 86 at p. 20.)

Because the attorneys believed that Johnson might be covered under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and therefore facing a fifteen-year mandatory minimum sentence, they obtained a "Pre-Plea Disclosure Presentence Investigation Report."  (Crim. ECF 64.)  That report concluded that Johnson was an Armed Career Criminal.  At his plea, Johnson agreed that he and his attorney had gone over the Pre-Plea PSR and his written plea agreement, which expressly

stated (in bold): "the parties believe Defendant is an Armed Career Criminal."

(Crim. ECF 67 at p. 6.)  When I asked him about this at the plea hearing, he stated

that he understood that both the probation office and his attorneys believed that he

qualified for the fifteen-year mandatory minimum.  (Crim. ECF 86 at p. 6.)

The final PSR issued by the probation office determined that Johnson's Base

Offense Level was 24, and that four levels should be added pursuant to United

States Sentencing Guidelines § 2K2.1(b)(6)(B) because Johnson possessed a

firearm in connection with another felony offense.[1]  (Crim. ECF 72.)  The PSR

also found that Johnson qualified as an Armed Career Criminal because he had at

least three prior convictions for a violent felony or serious drug offense, or both,

which were committed on different occasions.  The PSR concluded that Johnson

was subject to a minimum term of imprisonment of fifteen years and a sentencing

guidelines range of 188 to 235 months of imprisonment.  I adopted the uncontested

findings of the PSR but sentenced Johnson to 120 months of imprisonment as

jointly recommended by the parties.

Johnson has now filed a § 2255 motion and amended § 2255 motion denying

responsibility for the crime and challenging his sentence.  He alleges that he lacked

the "culpable mental state" to commit the crime, he was merely holding the gun to

---

[1] At the change of plea hearing, I confirmed that the other felony offense was related to
flourishing the weapon.  (Crim. ECF 86 at p. 14.)

return it to his friend, and that he never pointed the gun at the victims. He asserts

the following grounds for relief:

1) His counsel was ineffective for failing to "request a competency hearing and investigate movant's mental state;"

2) His counsel was ineffective for failing to "do investigation and investigate movant's arrest, investigation of the discovery and issues surrounding the arrest and failed to prepare a defense;"

3) His counsel was ineffective for failing to "investigate and challenge the laws and facts of movants convictions that has classified him as an armed career criminal;"

4) His counsel was ineffective for failing to "challenge the 2K2.1(b)(6)(B) 4 point enhancement;" and

5) His conviction cannot stand in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019).

(ECF 4.)

## Discussion

### A. Johnson Did Not Receive Ineffective Assistance of Counsel

The Sixth Amendment guarantees criminal defendants the right to effective

assistance of counsel, *Chesney v. United States,* 367 F.3d 1055, 1058 (8th Cir.

2004), and that right extends to plea negotiations, *Missouri v. Frye,* 566 U.S. 134,

144 (2012); *Hill v. Lockhart,* 474 U.S. 52, 57 (1985), and sentencing, *Lafler v.

Cooper*, 566 U.S. 156, 165 (2012). Claims of ineffective assistance of counsel are

governed by the two-part test set out in *Strickland v. Washington,* 466 U.S. 668

(1984). Accordingly, to prevail on his claims, Johnson must show that (1) his

attorney's performance was deficient, and (2) the deficiency prejudiced him. *Tinajero-Ortiz v. United States,* 635 F.3d 1100, 1103 (8th Cir. 2011).

I "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.  To establish prejudice, the movant must show a reasonable probability that the result of the proceeding would have been different, but for counsel's deficient representation.  *Id*. at 694.  "A reasonably probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  In the context of guilty pleas, a movant must show that "there is 'a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial.' "  *Tinajero-Ortiz*, 635 F.3d at 1103 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

1. Ground 1 – Failure to Request Competency Hearing and Investigate Mental Health

In Ground 1, Johnson argues that his counsel was ineffective for failing to request a competency hearing and investigate his mental health.  He claims that such a hearing would have shown he had been diagnosed with several mental illnesses—including bipolar disorder, paranoid schizophrenia, manic depression, and having multiple personalities—and was not taking his prescribed medications. Because a competency hearing would show that he "did not possess the culpable mental state regarding each statutory element that criminalizes otherwise innocent

conduct," he would have not pleaded guilty and insisted on going to trial.  (ECF 4-3 at p. 10.)

As an initial matter, Johnson appears to conflate the constitutional requirement that a defendant is competent to stand trial and his "culpable mental state."  The former "prohibits the trial and conviction of a defendant who is mentally incompetent."  *Vogt v. United States*, 88 F.3d 587, 590 (8th Cir. 1996) (citing *Drope v. Missouri*, 420 U.S. 162, 172 (1975)).  The latter is an element of the crime that the government would have been required to prove at trial to convict him.  In other words, a competency hearing would not have established that Johnson "was mentally incompetent to have 'knowingly' committed this crime," but rather, whether Johnson met the minimal constitutional requirements to be tried at all.  (ECF 4-3 at p. 6.)

To the extent that Johnson argues that he was not competent to stand trial, his claim fails.  The presence of mental illness alone does not show that a defendant is incompetent.  *See Stoner v. United States*, No. 1:09-CV-84 CAS, 2011 WL 5221890, at *6 (E.D. Mo. Nov. 2, 2011) ("It is not enough for a movant to simply assert that he had a history of mental illness").  Competency is instead determined by whether an individual has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."  *Dusky*

*v. United States*, 362 U.S. 402 (1960) (per curiam).  "The burden of persuasion was on petitioner to show that he was incompetent by a preponderance of the evidence."  *Vogt*, 88 F.3d at 591.

Johnson claims that he suffered several mental illnesses, and was not taking his prescribed medications, but does not claim that he was unable to consult with his attorney or understand the proceedings against him.  Such a claim would be clearly refuted by the record: at the change of plea hearing, Johnson was responsive, affirmed that he understood the proceedings, and indicated that he was not under the influence of drugs or medication.  (Crim. ECF 86).  He stated that he was not under the care of a doctor or psychiatrist for anything other than gastric reflux.  (*Id.* at pp. 3-4).  I determined that Johnson was competent to enter his plea. (*Id.* at p. 20.)  Also, Johnson does not explain what a competency hearing would show.  Such "[r]etrospective determinations of whether a defendant is competent to stand trial or to plead guilty are strongly disfavored."  *Weisberg v. State of Minn.*, 29 F.3d 1271, 1278 (8th Cir. 1994).

Johnson's real claim appears to be that his counsel failed to investigate his mental health history and whether it presented a viable defense to the crime.  He notes that the Court denied his motion to be released pending trial in part because he has a history of serious mental illness, sometimes untreated, and he claims that his counsel never inquired with him about his mental health.  Johnson appears to

- 7 -

claim that he would not have pleaded guilty and would have insisted on going to trial if counsel had investigated his mental health because the investigation would show that he could not have "knowingly" possessed the gun.

"Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories." *Lyons v. Luebbers*, 403 F.3d 585, 594 (8th Cir. 2005) (quoting *Foster v. Lockhart*, 9 F.3d 722, 726 (8th Cir. 1993)). "Counsel's performance may be found ineffective if s/he performs little or no investigation." *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991).

Johnson's claim is directly contradicted by his written plea agreement and his sworn statement to the Court during his change of plea hearing. In his signed plea agreement, Johnson agreed that he was "fully satisfied with the representation received from defense counsel," he "reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel," and his counsel "completely and satisfactorily explored all areas which [Johnson] ha[d] requested relative to the United States' case and any defenses." (Crim. ECF 67 at p. 10.) At the change of plea hearing, he stated that he had enough time to discuss his case with his counsel, he was satisfied with counsel's representation, there was nothing that he wanted counsel to do that

counsel failed or refused to do, and everything in his plea agreement was true.

(Crim. ECF 86 at pp. 4-5, 9.)  At sentencing, he also apologized for his conduct:

> I would like to first just thank you for the opportunity to speak.  I apologize to the Government for, of course, my case, you know, not being an upstanding citizen.  I'm not going to make any excuses for what I did.  I did it.  I'd like to apologize to my mother, my family for putting them through this yet again, and I accept responsibility.

(Crim. ECF 84 at p. 4.)  "Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Johnson's new contradictory assertions do not overcome that presumption.  *Id.* ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

Even if counsel failed to investigate his mental health history, Johnson's claim that he would have otherwise not pleaded guilty and insisted on going to trial strains credulity.  Johnson's own brief in support of this motion admits that he knowingly possessed the firearm:

> Ashley Tyler, which is Movant's fiancé, called him, Lemario, and informed him that his best friend (Derrick Kyles) left his gun & holster on the seat of his SUV . . . .  Ms. Tyler demanded that Movant come get it because she is scared of guns.  Movant retrieved the gun so he could contact Mr. Kyles to come get it.

(ECF 4-3 at p. 1.)  Johnson cannot credibly argue that he did not know he possessed the gun when he himself has admitted that he retrieved it to return it to

his friend.  Any allegation to the contrary is "wholly incredible."  Because Johnson's claim is contradicted by his sworn statements, and his own account of the incident shows that he was not prejudiced by his counsel's purported failure, I will deny Ground 1.

2.  Ground 2 – Failure to Investigate

In Ground 2, Johnson challenges counsel's failure to investigate other aspects of the crime.  He argues that his counsel should have interviewed him, his fiancé, and his friend—the owner of the gun—and otherwise should have further investigated the circumstances of his arrest.  Had his counsel done so, Johnson claims that his counsel would have discovered that he lacked the culpable mental state to commit the offense, he was merely returning the gun to his friend who had inadvertently left it in his car, and that surveillance footage from the gas station showed he never pointed the gun at anyone.

Again, Johnson's claims are directly contradicted by his sworn statements that he was satisfied with his counsel's representation and there was nothing that he wanted counsel to do that he refused to do, as well as his account of the incident.  Johnson agreed in his plea agreement that he pointed the gun at the victims and agreed that four levels would be added to his offense level because he possessed the firearm in connection with another felony offense.  (ECF 86 at p. 14.)

Johnson also does not adequately explain how his counsel's investigation would have affected his decision to plead guilty.  Even accepting Johnson's narrative—that his friend inadvertently left the gun in his car, and that Johnson retrieved the gun and placed it on his person minutes before officers arrived in order to return it to his friend—his actions would still constitute a violation of § 922(g)(1): he still knowingly possessed the firearm when he placed it on his person.  His alleged reasons for possessing the firearm are not a defense to the charge of being a felon in possession of a firearm.  *See, e.g., United States v. El-Alamin,* 574 F.3d 915, 925 (8th Cir. 2009) ("Thus far, this circuit has not recognized a defense of legal justification to a violation of § 922(g).").

I will deny Ground 2 as well.

3.  Ground 3 – Failure to Challenge Armed Career Criminal Status

In Ground 3, Johnson claims that he was improperly sentenced as an Armed Career Criminal under 18 U.S.C. § 924(e).  He argues that his counsel was ineffective for "failing to investigate and challenge the laws and facts of his priors . . . and the government failed to present verification of the three priors that qualified as predicate violent felonies or serious drug offenses, and failed to give notice of the enhanced punishment."  (ECF 4-3 at p. 16.)  Johnson's claim fails for the same reasons as Grounds 1 and 2: any such challenge would have been meritless, and his claim is refuted by the record.

- 11 -

Under § 924(e), "a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another," is subject to no less than fifteen years of imprisonment.   A "serious drug offense" includes "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." § 924(e)(2)(A)(ii).  And a "violent felony" is defined in part as "any crime punishable by imprisonment for a term exceeding one year . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i).

To determine whether Johnson's prior convictions were for crimes of violence or serious drug offenses, I apply a "categorical approach, looking to the elements of the offense as defined in the . . . statute of conviction rather than to the facts underlying the defendant's prior conviction." *United States v. McMillan*, 863 F.3d 1053, 1056 (8th Cir. 2017) (internal quotation marks and citations omitted). If the statute of conviction is divisible in that it encompasses multiple crimes, some of which qualify under the statute and some which do not, I apply a "modified categorical approach" where I look to a limited class of documents, such as the charging document, plea colloquy, and comparable judicial records, to determine which part of the statute the defendant violated.  *Id.*; *see also Mathis v. United*

*States*, 579 U.S. 500, 505 (2016).  I then must determine whether a violation of that statutory subpart qualifies as a crime of violence or serious drug offense. *McMillan*, 863 F.3d at 1056.

Johnson contends that two of the convictions predicating his sentence under § 924(e) do not qualify as violent felonies or serious drug offenses.[2]  Specifically, he argues that his 1999 conviction for Unlawful Use of a Weapon under Missouri Revised Statutes § 571.030.1 was not a violent felony, and that his 2011 conviction for Participation in Methamphetamine Manufacturing under 720 Illinois Compiled Statutes 646/15 was not a serious drug offense.  Contrary to Johnson's assertions, both convictions qualify under the act.

At the time of Johnson's conviction for Unlawful Use of a Weapon, Missouri Revised Statutes § 571.030.1 proscribed various use of a weapon. Because the statute is divisible, I must inspect court records to determine which part of the statute the defendant violated.  Johnson's indictment and judgment in his 1999 conviction clearly indicate that Johnson was charged with and pleaded guilty to section 571.030.1(4), which prohibits knowingly, "[e]xhibit[ing], in the presence of one or more persons, any weapon readily capable of lethal use in an angry or threatening manner[.]"  At the time of Johnson's sentencing, the Eighth

---

[2] Johnson does not contend that the third conviction predicating his qualification for an enhanced sentence under § 924(e)—Robbery 1st Degree—does not qualify as a crime of violence under the statute.  (Crim. ECF 72 at ¶¶ 28, 46.)

Circuit had repeatedly found that § 571.030.1(4) was a violent felony.  *See e.g.*
*United States v. Pulliam*, 566 F.3d 784, 788 (8th Cir. 2009); *Untied States v.*
*Hudson*, 851 F.3d 807, 808 (8th Cir. 2017).

Neither the Eighth Circuit nor the Seventh Circuit has specifically found that
a violation of 720 Illinois Compiled Statutes 646/15 is a "serious drug offense,"
but the language of the statute plainly qualifies.  It provides that "it is unlawful to
knowingly participate in the manufacture of methamphetamine with the intent that
methamphetamine or a substance containing methamphetamine be produced."  720
Ill. Comp. Stat. Ann. 646/15(a)(1) (West 2011).  The statute provides maximum
terms of imprisonment ranging from fifteen years to sixty years depending on the
amount of methamphetamine and aggravating factors.[3]  Because the statute
proscribes conduct that is the same or narrower than "an offense under State law,
involving manufacturing . . . a controlled substance for which a maximum term of
imprisonment of ten years or more is prescribed by law," the conviction qualifies
as a serious drug offense.  18 U.S.C. § 924(e)(2)(A)(ii).

Like Johnson's other claims, his assertions are also contradicted by the
record.  Johnson stated in his plea agreement that he believed that he was an

---

[3] A person who participates in the manufacture of less than fifteen grams of methamphetamine or
substance containing methamphetamine, the least serious offense under the statute, is guilty of a
Class 1 felony.  720 Ill. Comp. Stat. Ann. 646/15(a)(2)(A) (West 2011).  At the time of
Johnson's conviction, Illinois punished Class 1 felonies by "not less than 4 years and not more
than 15 years" of incarceration.  730 Ill. Comp. Stat. Ann. 5/5-4.5-30(a) (West 2011).

Armed Career Criminal.  (Crim ECF 67 at p. 6.)  At the change of plea hearing,

Johnson stated that he understood the consequences of qualifying as an Armed

Career Criminal and that the pre-plea PSR indicated that he would do so.  (Crim.

ECF 86 at pp. 6, 13-16.)  And at sentencing, Johnson confirmed that he was

provided an opportunity to discuss the final PSR with counsel and that he did not

have any objections.  (Crim. ECF 84 at p. 2.)  I also note that Johnson did not

receive the fifteen-year mandatory minimum sentence under the statute and was

instead sentenced to only ten years based on the government's motion and the

parties' joint recommendation.  Now Johnson challenges a mandatory minimum he

did not actually receive.  His claim is denied.

    4.  Ground 4 - Failure to Challenge Four-point Enhancement

    Johnson next argues that his counsel was ineffective for failing to challenge

the four-point enhancement to his Base Offense Level pursuant to U.S.S.G.

§ 2K2.1(b)(6)(B).  Any such challenge would have been meritless.  Johnson

specifically agreed that "4 levels should be added pursuant to Section

2K2.1(b)(6)(B) because [he] possessed a firearm in connection with another felony

offense" in his plea agreement.  (Crim. ECF 67 at p. 5.)  I confirmed with Johnson

that he understood that four points would be added because he possessed the

firearm in connection with another felony offense.  (Crim. ECF 86 at p. 14.)  And

though Johnson now claims that he never flourished the gun, he stated in his plea

agreement that he did.  (Crim. ECF 67 at p. 3.)  Counsel is not ineffective for

failing to make an objection which contradicts the plea agreement.  *See Fletcher v.*

*United States*, No. 10-05003-CV-SW-DGK, 2010 WL 3526268, at *3 (W.D. Mo.

Sept. 3, 2010) ("Failure to make an objection which contradicts the terms of a plea

agreement was not deficient performance.").

Because Johnson has failed to show that he was prejudiced by his counsel's

purported failures, and his claims are otherwise refuted by the record, I will deny

Grounds 1-4 of Johnson's amended petition.

### B. Johnson's Conviction is Not Affected by *Rehaif*

In Ground 5, Johnson argues that his § 922(g) conviction cannot stand after

the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).

In 2018, when Johnson pleaded guilty and was sentenced, the Eighth Circuit

required proof of only three elements to support a conviction under § 922(g)(1):

"(1) previous conviction of a crime punishable by a term of imprisonment

exceeding one year, (2) knowing possession of a firearm, and (3) the firearm was

in or affecting interstate commerce."  *United States v. Montgomery*, 701 F.3d 1218,

1221 (8th Cir. 2012).  However, after Johnson was sentenced, the Supreme Court

held in *Rehaif* that § 922(g) additionally required proof that the defendant "knew

he belonged to the relevant category of persons barred from possessing a firearm."

139 S. Ct. at 2200.  Construing his motion liberally, Johnson argues that plea was

not knowing and voluntary because he was not properly informed that the government was required to prove that he knew of his prohibited status, and he is actually innocent of the offense.

Neither the Supreme Court nor Eighth Circuit has determined that *Rehaif* is retroactive on collateral review. I need not decide whether *Rehaif* is retroactive on collateral review, however, because Johnson's claim is procedurally defaulted and fails on the merits. Generally, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998). There are two exceptions to this rule. "In order to obtain collateral review on a procedurally defaulted claim, a habeas petitioner must show either that there was cause for his procedural default and actual prejudice, or that he is actually innocent of the crime for which he was convicted." *Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012).

Johnson did not raise his *Rehaif* claim in this Court nor pursue a direct appeal. He has not attempted to show cause and actual prejudice to excuse the procedural default. Nor does his claim of "actual innocence" avoid the procedural bar in this case because "actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (cleaned up). Actual innocence claims require a movant to "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence – that was not presented at trial." *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997) (cleaned up). "This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a conviction." *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (cleaned up). "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Weeks*, 119 F.3d at 1351 (cleaned up).

To support his actual innocence claim, Johnson does not argue that he was unaware of his status as a convicted felon, nor could he credibly do so. Johnson admitted under oath that he "had been convicted of at least one felony crime punishable by imprisonment for a term of more than one year." (Crim. ECF 86 at pp. 12-13.) The uncontested criminal-history section of Johnson's PSR shows that he was convicted of eleven felonies between 1996 and 2011 and received several sentences exceeding one year.[4] He served more than seven years in the Missouri Department of Corrections with respect to his 1999 convictions for forgery, unlawful use of a weapon, fraudulent use of a credit device, robbery, and assault.[5]

---

[4] (Crim. ECF 72 ¶¶s 36, 41, 43-46, 49-51, 53, 54.)
[5] Docket Numbers 2198R-05126B-01 (Forgery: seven-year sentence), 2198R-05095-01 (Unlawful Use of a Weapon – Exhibiting: five-year sentence), 2198R-06213B-01 (Fraudulent Use of a Credit Device: five-year sentence), and 22991-00140A (Robbery 1st Degree and Assault 2nd Degree: ten-year sentence concurrent with seven-year sentences) in Circuit Court of St. Louis County, Missouri. (Crim. ECF 72 at ¶¶ 43-46.)

And he served nearly three years for his 2011 conviction for unlawful participation in methamphetamine production and forgery.[6]

In light of these facts, Johnson's claim that he is actually innocent of being a felon in possession of a firearm in violation on of 18 U.S.C. § 922(g)(1) fails as there is "no doubt" that Johnson, after serving more than a decade in prison, was aware of his status as a person convicted of an offense punishable by more than a year in prison.  *See, e.g., United States v. Owens*, 966 F.3d 700, 707 (8th Cir. 2020) ("There would have been no doubt that Owens, after serving twenty-two years in prison for murder and other felonies, was aware of his status as a person convicted of an offense punishable by more than a year in prison"); *United States v. Welch*, 951 F.3d 901, 907 (8th Cir. 2020) ("Welch has received and served several prison sentences longer than one year for felony convictions. It is not reasonably probable that, if the government had to prove Welch's knowledge of a previous conviction of [a felony] he would have been acquitted") (cleaned up); *United States v. Hollingshed*, 940 F.3d 410, 415-16 (8th Cir. 2019) (concluding that defendant knew he was a convicted felon at the time he unlawfully possessed a firearm not only because he stipulated at trial that he had previously been convicted of a crime, but also because he previously served four years in prison for a drug offense, in addition to a subsequent 15 month sentence after his supervised release was

---

[6] Docket Number 11CF274 in Circuit Court in Adams County, Illinois.  (Crim ECF 72 at ¶ 53.)

revoked).  As the Supreme Court recently observed when rejecting a *Rehaif* claim made on direct appeal, "Convicted felons typically know they're convicted felons." *Greer v. United States*, 141 S. Ct. 2090, 2098 (2021) (cleaned up).

As Johnson has presented no evidence that he was unaware of his status as a convicted felon at the time he possessed the firearm, and the overwhelming evidence of record in this case would make any such assertion patently implausible, Johnson is not entitled to relief on his *Rehaif* claim as procedurally defaulted and meritless.  Ground 5 of Johnson's § 2255 motion is denied.

### Johnson's Other Motions

I will also deny Johnson's other motions.

Johnson has moved for an evidentiary hearing.  "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief."  *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted).  "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based."  *Id.* (internal quotation marks and citations omitted).  The record conclusively refutes Johnson's claims, so I will not hold an evidentiary hearing.

Johnson has made several motions for discovery in one form or another. (*See* ECF 22, 23, 24.)  Rule 6(a) of the Rules Governing Section 2255 Proceedings

provides that I may grant leave to conduct discovery when a party shows good cause. Johnson has not done so here.

Finally, Johnson moves the court for leave to amend or supplement his motion, apparently to inform the court that 18 U.S.C. § 924(e) requires that the predicate "serious drug offense" under state law carries a maximum term of imprisonment of ten years or more. But as explained above, Johnson's state court conviction for participation in methamphetamine manufacture prescribes a maximum term of imprisonment of fifteen years or more.

## I Will Not Issue a Certificate of Appealability

As Johnson has not made a substantial showing of the denial of a federal constitutional right, I will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that Lemario Quinntel Johnson's Motion to Vacate, Set Aside, or Correct Sentence [1] and Amended Motion to Vacate, Set Aside, or Correct Sentence, [4] are **DENIED**.

**IT IS FURTHER ORDERED** that Johnson's additional motions [20, 22, 23, 24, 26] are **DENIED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue, as Johnson has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is issued this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 7th day of July, 2022.